**Jonny Russell** (Oregon SBN 220641)
Jonnyrussell.law@outlook.com
LAW OFFICES OF JONNY RUSSELL
10918 SW Celeste Ln. #202
Portland, OR 97225
Tel: (805) 302-1805
Attorney for Plaintiffs

**Craig Ackermann** (*pro hac vice* application forthcoming)
cja@ackermanntilajef.com
CA Bar No. 229832
**Brian Denlinger** (*pro hac vice* application forthcoming)
bd@ackermanntilajef.com
WA Bar No. 53177
ACKERMANN & TILAJEF, P.C.
315 South Beverly Drive, Suite 504
Beverly Hills, CA 90212
Telephone: (310) 277-0614
Fax: (310) 277-0635
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| JESSICA HIX and JADE LEE ANDERSON,<br><br>     Plaintiffs,<br><br>v.<br><br>DAVE & BUSTER'S MANAGEMENT CORPORATION, INC. dba DAVE & BUSTER'S,<br><br>     Defendant. | **PLAINTIFFS' COMPLAINT FOR:**<br><br>**1. SEXUAL HARASSMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 [42 U.S.C. §§ 2000e, *et seq.*];**<br>**2. RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 [42 U.S.C. 2000e-3(a)];**<br>**3. SEXUAL HARASSMENT IN VIOLATION OF OREGON STATE LAW AGAINST DISCRIMINATION [ORS 659A.001, *et seq.*];**<br>**4. RETALIATION IN VIOLATION OF OREGON STATE LAW AGAINST DISCRIMINATION [ORS 659A.001, *et seq.*]; and**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Jessica Hix ("Plaintiff Hix") and Jade Lee Anderson ("Plaintiff Anderson") (together "Plaintiffs") hereby file their Original Complaint against Defendant Dave & Buster's Management Corporation, Inc. ("Defendant"), respectfully alleging as follows:

## I.    SUMMARY

1.    Plaintiffs were employed by Defendant at its Dave & Buster's restaurant and sports bar located in Happy Valley, Oregon. Plaintiffs seek compensatory and punitive damages, attorneys' fees and costs based on Defendant's creation and toleration of a sexually hostile work environment during Plaintiffs' employment in violation of Title VII of the Civil Rights Act of 196442 U.S.C. §§ 2000e, *et seq.* ("Title VII") and Oregon state law, ORS 659A,001, *et seq.* ("OSLAD"). Plaintiff Anderson also seeks back pay, interest, front-pay, compensatory and punitive damages, attorneys' fees and costs for Defendant's retaliation in response to her sexual harassment complaints in violation of Title VII and the OSLAD.

2.    During their employment with Defendant, Plaintiffs were subjected to sexual harassment by prep cook coworker Mr. Alan Reid ("Mr. Reid"), Floor Manager Chad Traver ("Mr. Traver"), line cook coworker Tyler (last name unknown), and Corporate Trainer Mr. Thanial Juarez ("Mr. Juarez"). The sexually hostile work environment consisted of sexually inappropriate and unwanted advances, remarks, and comments (which were known or should have been known to Defendant)—but were allowed to persist in violation of Title VII and the OSLAD. Defendant failed to take appropriate prompt and effective steps to prevent and correct the sexual harassment to which Plaintiffs were subjected. For example, Defendant failed to properly train supervisors, investigate complaints, and discipline and/or discharge harassers. Instead, when Plaintiff Anderson complained about workplace sexual harassment, Defendant discharged *her* in retaliation for her complaints.

///

## II.    JURISDICTION AND VENUE

3.      This Court has federal question jurisdiction over Plaintiffs' sexual harassment and/or retaliation claims pursuant to 28 U.S.C. §1331 and 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"). The Court has supplemental jurisdiction over Plaintiffs' Oregon state law sexual harassment and retaliation claims pursuant to 28 U.S.C. § 1367, because they arise from the same facts as their federal claims.

4.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b)-(c), because Defendant maintains restaurant locations in this district (including the restaurant location where Plaintiffs worked), Defendant conducts business in this district, a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this district, and records relevant to those events and omissions are maintained and administered in this district.

## III.    PARTIES

5.      Plaintiff Hix is a female resident of Oregon. She has been employed by Defendant since September 4, 2021, initially as a dishwasher, and, more recently, as a prep cook.

6.      Plaintiff Anderson is a female resident of Oregon. She was employed by Defendant from April 3, 2020, until her retaliatory discharge on December 9, 2021. Most recently, Plaintiff Anderson worked as a prep cook and receiver.

7.      Defendant is a corporation incorporated under the laws of the State of Delaware, with its principal place of business in Coppell, Texas. Defendant's parent company, Dave & Buster's Entertainment, Inc.—which trades on the NASDAQ under the ticker, "PLAY"—owns and operates 150 sports-bar-style restaurants throughout the U.S., including Oregon. In 2022, Dave & Buster's generated profits over $137 million on sales of around $2 billion. Defendant's employees run the parent company's restaurants. Defendant's registered agent for service in Oregon is Capitol Corporate Services, Inc., 698 12th Street SE, Suite 200, Salem, Oregon 97301.

### IV.    STATEMENT OF FACTS

**A.  Facts Relevant to Plaintiff Hix's Sexual Harassment Claims**

8.    From September 4, 2021 through the present, Plaintiff Hix has been employed by Defendant at its Dave & Buster's sports bar and restaurant located at 11860 SE 82nd Ave, Ste 4020, Happy Valley, OR 97086. Beginning in December 2021, various male co-workers and male managers of Defendant subjected Plaintiff Hix and others to a sexually hostile work environment. Defendant oversaw a pattern or practice of sexual harassment, which consisted of sexually inappropriate and unwanted advances, remarks, and comments to Plaintiff Hix and others.

9.    Beginning in December 2021, Plaintiff Hix was subjected to sexually inappropriate comments from her coworker, Mr. Reid, who was a prep cook. Starting on the first day Plaintiff Hix began working as a prep cook, Mr. Reid constantly discussed his sex life with her and Plaintiff Anderson while training them. For instance, Mr. Reid told Plaintiff Hix that he had an open relationship with his wife. Additionally, Mr. Reid mentioned to Plaintiffs that a woman he has been in a relationship with was "crazy in bed," in addition to regularly reciting sexually inappropriate "that's what she said" jokes and "my dick" jokes.

10.    On several occasions, Plaintiff Hix mentioned to her coworker, Mike (last name unknown), who was a line cook, that Mr. Reid regularly made inappropriate sexual jokes and that it made her very uncomfortable.

11.    In or around late March 2022, Defendant hosted a large banquet for a party at Plaintiffs' location. When the banquet ended and the venue cleared out, the floor manager, Mr. Traver, started making jokes while Plaintiff Hix and others were cleaning up. When only Plaintiffs were around him, Mr. Traver made a sexual joke about incest: "Did you know they made the reverse cowgirl illegal in Tennessee because you never turn your back on family?"

Plaintiffs continued working while Mr. Traver started laughing at his joke. Since Plaintiff Hix was so shocked and not sure she heard Mr. Traver correctly, Plaintiff Hix asked Mr. Traver what he said. Mr. Traver repeated the sexually inappropriate joke. In response, Plaintiffs ignored Mr. Traver and returned to work.

12.     In or around April 2022, Plaintiff Hix was working in the kitchen on the prep line with Plaintiff Anderson when she observed one of her coworkers, Tyler, who worked as a line cook, approach Plaintiff Anderson from behind. Although Plaintiff Hix was unable to hear what Tyler said to Plaintiff Anderson from where she was standing, Plaintiff Hix noticed Plaintiff Anderson get very quiet and very still. Plaintiff Hix could tell Plaintiff Anderson looked extremely uncomfortable. Plaintiff Hix felt really concerned. Then, Plaintiff Hix watched Tyler leave the kitchen to print off something from the label maker nearby. Immediately, Plaintiff Anderson approached Plaintiff Hix. She asked Plaintiff Hix to take a break with her. Plaintiff Anderson informed Plaintiff Hix that when Tyler approached her, he whispered in her ear, "Oh yeah, you like rubbing that meat, don't you?" Then, when she turned around and did not respond to him, Tyler looked her directly in the eyes and repeated himself louder: "Oh yeah, you like rubbing that meat, don't you?" before he walked away. Plaintiff Anderson told Plaintiff Hix that she was extremely upset and offended by Tyler's sexually inappropriate comments.

13.     When Plaintiff Hix and Plaintiff Anderson returned to the kitchen after the break, Plaintiff Anderson went to report the incident to the kitchen manager, Darrell Gray ("Mr. Gray"), and the assistant general manager, Cassi Jordi ("Ms. Jordi"). Plaintiff Hix accompanied Plaintiff Anderson to make a supporting statement since she observed the sexual harassment occur. Plaintiff Hix knew Tyler before working at Dave & Buster's from a job corps program in Astoria they were both involved in from 2015 until March of 2018. At that time, Tyler was enrolled in the culinary program, while Plaintiff Hix was enrolled in the medical assisting program. Plaintiff

Hix recalls Tyler making her very uncomfortable while in the job corps program because he constantly asked Hix to go out with him even though she continually made it clear to Tyler that she was not interested. Despite Plaintiff Hix rejecting his advances, Tyler, nevertheless, continued to sit uncomfortably close to Plaintiff Hix and often tried to touch her hand.

14.     On or around June 25, 2022, Plaintiff Hix was in the kitchen on the prep line dicing tomatoes with Plaintiff Anderson when Mr. Juarez came up to Plaintiffs and said, "You are taking too long to dice the tomatoes." When Plaintiff Hix explained the dicer was broken as the reason it was taking longer than usual to dice the tomatoes, Mr. Juarez said he would just use the dicer anyway. When Plaintiff Hix informed him that the broken dicer had already been thrown away, Mr. Juarez grabbed his own set of equipment, invaded Plaintiff Hix's personal space by putting his own cutting board right up against Plaintiff Hix's, and started dicing the vegetables while making multiple comments about how Plaintiffs were not dicing the vegetables correctly and stating, "This is how you do it." Mr. Juarez's outburst caused Plaintiff Hix to stop making the pico she had been preparing. Plaintiff Anderson informed Mr. Gray and Ms. Jordi that Plaintiffs both felt very uncomfortable working with Mr. Juarez, while he continued to criticize their work by aggressively telling them he was going to show Plaintiff Hix how to fix the alfredo even though Plaintiff Hix had already made it correctly.

15.     When Plaintiff Anderson returned to the kitchen, Mr. Juarez looked down at his phone, laughed. Then, while standing between Plaintiffs, he said, "My homie has three cases of Plan B pills for $300 bucks a pop." Plaintiffs both looked at each other in shock because they found his comment extremely inappropriate. Mr. Juarez went on to say how the *Roe v. Wade* decision being overturned days earlier was "no big deal." Then, Mr. Juarez made direct eye contact with Plaintiffs and said, "I just put my dick in her pussy, and I don't give a fuck what happens to the bitch or baby afterwards."

16.     Salvador Pilgrim ("Mr. Pilgrim"), another coworker of Plaintiff Hix who works for Dave & Buster's as a prep cook, was standing nearby and overheard Mr. Juarez's inappropriate comments. Plaintiff Hix kept working and tried to ignore Mr. Juarez while making sure Mr. Pilgrim was okay because he was a new employee, and Plaintiff Hix did not want him to feel discouraged by Mr. Juarez's sexually inappropriate comments. Simultaneously, Plaintiff Anderson reported the incident to Mr. Gray and the bar manager, Elizabeth Cruz ("Ms. Cruz"). Plaintiff Hix was cleaning the triple sinks when Plaintiff Anderson returned to the kitchen. When Plaintiff Anderson returned, Mr. Juarez demanded Plaintiff Anderson fetch him a bucket of ice. Plaintiff Anderson responded to Mr. Juarez by saying, "Please…"—implying that he should be more polite. In a very sarcastic and demanding tone, Mr. Juarez replied, "…and thank you." Plaintiff Anderson brought Mr. Juarez the ice. She then left work for the rest of the day. The next day, Plaintiffs and Mr. Pilgrim spoke to their general manager, Roxy Pacheco ("Ms. Pacheco") in her office to report Mr. Juarez's sexually inappropriate comments from the previous day. However, Ms. Pacheco responded that Mr. Juarez was at Dave & Buster's to work long hours, and that there was not much she could do to improve the work environment.

17.     At all times, Plaintiff Hix was offended by the inappropriate and unwanted sexual advances, comments, and/or remarks by Mr. Reid, Tyler, Mr. Juarez, and Mr. Traver—as well by Defendant's management's failure to take any corrective action to stop the sexual harassment from continuing despite numerous complaints to management from Plaintiff Hix and her coworkers.

18.     To Plaintiff Hix's knowledge, the entirety of Defendant's sexual harassment training of employees and managers merely consists of a video with a short questionnaire during orientation upon hiring. The admonishments therein have not—and are not—being followed.

19.     Other than the orientation video training and questionnaire, Plaintiff Hix did not

receive any further anti-sexual harassment training during her employment with Defendant.

20.    Moreover, Defendant has not implemented any effective mechanism to prevent, investigate, and/or stop workplace sexual harassment—as underscored by (among other things) management's failure to take any action in response to numerous sexual harassment complaints made by Plaintiff Hix and her coworkers.

### B.  Facts Relevant to Plaintiff Anderson's Sexual Harassment and Retaliation Claims

21.    From January 2022 until her discharge, Plaintiff Anderson was also employed by Defendant at the Dave & Buster's sports bar and restaurant located at 11860 SE 82nd Ave, Ste. 4020, Happy Valley, OR 97086. Plaintiff Anderson previously worked for the same Dave & Buster's from April 3, 2020 through December 9, 2021. Beginning in January 2022, various male coworkers and male managers of Defendant subjected Plaintiff Anderson and other female employees to a sexually hostile work environment. Defendant tolerated  a pattern or practice of sexual harassment, which consists of sexually inappropriate and unwanted advances, remarks, and comments to Plaintiff Anderson and other female employees.

22.    Beginning in January 2022, Plaintiff Anderson was subjected to sexually inappropriate comments from her coworker, Mr. Reid, who was also a prep cook until he quit not long thereafter. Mr. Reid consistently discussed his sex life with Plaintiffs while he trained Plaintiffs on how to be a prep cook. For example, Mr. Reid told Plaintiffs he had an open relationship with this wife, and that he was seeing a woman he thought was "crazy in bed." Additionally, Mr. Reid regularly told Plaintiffs sexually inappropriate "that's what she said" jokes and "my dick" jokes. On one occasion, Mr. Reid told Plaintiffs he had multiple girlfriends who would get jealous of each other; and once took two of his girlfriends on a date together which he thought was very uncomfortable, but it turned out fine because he was "screwing both of them." When Mr. Reid spoke about the women he was dating, he often used phrases such as,

"Fuck that bitch" and/or "She is crazy!"

23.    In or around late March 2022, Defendant hosted a large banquet. When the banquet ended and cleared out, Plaintiffs were cleaning up by wiping down the counters, putting things away, and labeling equipment. Suddenly, Mr. Traver approached Plaintiffs and made a sexual joke about incest: "Did you know they made the reverse cowgirl illegal in Tennessee because you never turn your back on family?" Plaintiffs were in disbelief that they heard Mr. Traver correctly—so Plaintiff Hix asked Mr. Traver what he said, and Mr. Traver repeated the sexually inappropriate and distasteful joke. Plaintiffs ignored Mr. Traver and continued working. Eventually, Mr. Traver walked away.

24.    In or around April 2022, Plaintiff Anderson was in the kitchen making the rub for the pork belly when one of her coworkers, Tyler (whom she had never met before and who worked as a line cook), approached her from behind and whispered in her ear, "Oh yeah, you like rubbing that meat, don't you?" Plaintiff Anderson was so startled and shocked that she turned around and could not say anything. Then, Tyler looked Plaintiff Anderson directly in the eyes and repeated himself even stronger: "Oh yeah, you like rubbing that meat, don't you?" before walking away. Plaintiff Hix was standing nearby. She witnessed the entire encounter. Immediately, Plaintiff Anderson asked Plaintiff Hix to take a break with her and Plaintiffs discussed what had just happened. Then, Plaintiff Anderson went to find the kitchen manager, Mr. Gray, and the assistant general manager, Ms. Jordi, to report the incident. Mr. Gray and Ms. Jordi instructed Plaintiff Anderson to make a written statement to document the incident. Plaintiff Anderson did. Ultimately, Tyler was suspended and fired due to his sexual harassment, only because the company considered him easily replaceable.

25.    On or around June 25, 2022, Plaintiff Anderson was slicing tomatoes on the cook prep line with Plaintiff Hix when Plaintiffs were approached by Mr. Juarez. Although Plaintiffs

had never met Mr. Juarez, Mr. Juarez entered the kitchen and immediately started nitpicking Plaintiffs' work in a very unprofessional, aggressive, and hostile manner. Mr. Juarez started off by telling Plaintiffs they were taking too long to dice the tomatoes and then showing them how to cut cabbage even though they already knew how. Mr. Juarez also began to nitpick the work of Mr. Pilgrim, who works for Defendant as a prep cook. Immediately, Plaintiff Anderson went to find Mr. Gray and Ms. Jordi to report that she felt uncomfortable working with Mr. Juarez and that he was exhibiting sexist behavior by belittling Plaintiffs' work in the kitchen in telling them that everything they were doing was wrong. In response, Ms. Jordi dismissed Plaintiff Anderson's concerns by telling her that Mr. Juarez is a corporate trainer and only doing his job. Plaintiff Anderson went back to work alongside Plaintiff Hix. Before Plaintiff Anderson left from work that day, she went back to finish what she was working on. When she returned to the kitchen, Mr. Juarez shouted at her, demanding she fetch him a bucket of ice. Plaintiff Anderson responded to Mr. Juarez by saying, "Please…"—implying he should be more polite. In a very sarcastic and demanding tone, Mr. Juarez replied, "…and thank you." Plaintiff Anderson brought Mr. Juarez the ice.  When Plaintiff Anderson returned to the kitchen, Mr. Juarez looked at his phone, laughed. Mr. Juarez said, "My homie has Plan B pills for $300 bucks a pop." Plaintiff Anderson was so shocked upon hearing Mr. Juarez make that statement, especially in her presence and in the presence of Plaintiff Hix considering that the case *Roe v. Wade* had been overturned just the day prior. Plaintiff Anderson remained silent and continued wiping down the counter. Then, Mr. Juarez made eye contact with Plaintiffs and said, "I just put my dick in her pussy, and I don't give a fuck what happens to the bitch or baby afterwards." Mr. Pilgrim was also standing nearby and overheard Mr. Juarez's comments.

26.      Immediately, Plaintiff Anderson walked away. She found Mr. Gray and the bar manager, Ms. Cruz, and informed them of what Mr. Juarez had just said. Plaintiff Anderson told

Mr. Gray and Ms. Cruz that Mr. Juarez's comments were very inappropriate; that his comments made her extremely uncomfortable; and that she refused to work with someone who was creating a sexually hostile work environment. In response, Mr. Gray told Plaintiff Anderson that he would talk to Mr. Juarez and try to move Mr. Juarez's schedule—but that it would take some time. Mr. Gray never asked Plaintiff Anderson to write a statement regarding Mr. Juarez's sexual comments directed at Plaintiffs. Plaintiff Anderson told Mr. Gray that she was leaving for the day because she was so appalled by Mr. Juarez's comments and could not continue working around him at that moment.

27.     The following day, Plaintiff Anderson realized Mr. Gray never changed Mr. Juarez's schedule, and she still had to work alongside Mr. Juarez. Plaintiffs and Mr. Pilgrim went to speak to their general manager, Ms. Pacheco, and informed her that they all needed to have a serious discussion about Mr. Juarez's workplace behavior. Specifically, they informed Ms. Pacheco of Mr. Juarez's sexually inappropriate comments the day prior—i.e., "My homie has Plan B pills for $300 bucks a pop… I just put my dick in her pussy, and I don't give a fuck what happens to the bitch or baby afterwards"—and that Plaintiff Anderson already reported the incident to Mr. Gray and Ms. Cruz. Ms. Pacheco responded that she would talk to Mr. Juarez; however, she could not alter Mr. Juarez's schedule since he is a corporate trainer. Furthermore, Ms. Pacheco told Plaintiffs and Mr. Pilgrim that they would still have to work with Mr. Juarez, and that they should just accept that and focus on work.

28.     On or around June 28, 2022, Plaintiff Anderson called Defendant's Human Resources Department and spoke to a representative because nothing was being done about the sexual hostile work environment caused by Mr. Juarez. Plaintiff Anderson complained to the representative regarding Mr. Juarez's sexually inappropriate comments three days prior. Plaintiff Anderson informed the representative that she had already reported the incident to Mr. Gray, Ms.

Cruz, and Ms. Pacheco; and that Mr. Juarez's comments made her feel extremely uncomfortable. Plaintiff Anderson also reported to Mr. Gray, Ms. Cruz, and Ms. Pacheco that she felt uncomfortable by their response (or lack of response) to her complaints and by failing to ask her for a written statement. She felt as though her reports of sexual harassment was an inconvenience to them and the company.

29.     Dave & Buster's Human Resources representative instructed Plaintiff Anderson to make a written statement to document the incident. The human resources representative informed Plaintiff Anderson that she was going to contact Ms. Pacheco and Mr. Gray to tell them they needed to provide Plaintiffs and Mr. Pilgrim with the appropriate paperwork to submit a written statement regarding the incident. However, neither Ms. Pacheco nor Mr. Gray, ever gave Plaintiff Anderson, Plaintiff Hix, or Mr. Pilgrim the statement paperwork. Additionally, Human Resources never followed up with Plaintiff Anderson about the issue.

30.     On or around July 6, 2022, Plaintiff Anderson was looking for a charger cord for her speaker when one of her coworkers told her Mr. Traver had a bunch of cords in his desk. Plaintiff Anderson found Mr. Traver and asked him if she could use one of his charger cords. Mr. Traver told her that she could use one. Mr. Traver told Plaintiff Anderson to follow him into his office. While Plaintiff Anderson was standing at his desk, Mr. Traver put a bunch of cords on his desk. Plaintiff Anderson began to help look through the pile of cords; however, Mr. Traver turned to Plaintiff Anderson and said, "Calm down, calm down. Calm your sexy self down." Plaintiff Anderson was stunned and stood silently.

31.     Finally, Mr. Traver found the cord and gave it to Plaintiff Anderson. She left Mr. Traver's office and returned to the prep cook line. Shortly thereafter, Plaintiff Anderson reported Mr. Traver's sexually inappropriate comment to Ms. Pacheco. As Plaintiff Anderson pulled Ms. Pacheco aside, Mr. Traver waved at her. When Plaintiff Anderson informed Ms. Pacheco of Mr.

Traver's "sexy" comment in his office, Ms. Pacheco told Plaintiff Anderson that her sexual harassment reports should not be happening as much as they were allegedly occurring.

32.     Ms. Pacheco then said to Plaintiff Anderson, "If you want you can write a statement. You don't have to though." The message was clear. Ms. Pacheco was trying to discourage her from reporting workplace harassment. Since Mr. Traver was waiting right outside the door—and because Plaintiff Anderson did not believe her complaint would be taken seriously based on how the previous complaint about Mr. Juarez was handled—Plaintiff Anderson ultimately decided not to make a statement that day. However, on July 8, 2022, Plaintiff Anderson decided to submit a written statement regarding Mr. Traver's sexual harassment incident, as well as submitting a written statement regarding the sexual harassment involving Mr. Juarez.

33.     On July 7, 2022, Plaintiff Anderson sent a text message to Mr. Gray to inform him that she needed a mental health day due to the sexual harassment to which she was being subjected. Even though Plaintiff Anderson previously reported two incidents of sexual harassment to Mr. Gray, Mr. Gray told her he was unaware of any issue of sexual harassment; that no statement had been made; and that although he was aware that Plaintiff Anderson left work early the day prior—he did not know why.

34.     On or around July 8, 2022—when Plaintiff Anderson went back to work to make the two statements—Ms. Pacheco informed her that she spoke to Mr. Traver about Plaintiff Anderson's most recent report of sexual harassment, and that Mr. Traver claimed he had no idea what Plaintiff Anderson was talking about. It was clear Ms. Pacheco was suggesting Plaintiff Anderson was lying. Plaintiff Anderson felt very taken aback by Ms. Pacheco's skepticism of whether Plaintiff Anderson was being honest in bringing her sexual harassment complaints forward.

35.      That same day, after Plaintiff Anderson made the two statements, Plaintiff Anderson saw that Ms. Pacheco pulled Mr. Juarez aside to speak to him in her office for over an hour. It was evident that Ms. Pacheco, Mr. Gray, and Ms. Cruz did not discuss the issue with Mr. Juarez when Plaintiff Anderson originally made her complaints. Furthermore, Plaintiff Anderson still had to work with Mr. Juarez on the prep line later that day. While Plaintiff Anderson was working on the prep cook line, Mr. Juarez came into the kitchen, and worked on the line alongside her. Although Mr. Juarez did not say a word to Plaintiff Anderson the entire shift, he glared at her during the entire shift when nobody was looking. Mr. Juarez also intentionally invaded Plaintiff Anderson's personal space by walking very close to her during the shift to intimidate her. It was very intimidating. Plaintiff Anderson felt so uncomfortable and scared that she hid in the women's restroom to get away from Mr. Juarez. Then, Plaintiff Anderson informed Ms. Pacheco how uncomfortable she felt working with Mr. Juarez; and therefore, requested to leave for the day. Ms. Pacheco responded that the incident Plaintiff Anderson originally reported to her about Mr. Juarez on June 25, 2022 was already under investigation and that her discomfort was not a good reason for her to leave work. Furthermore, Ms. Pacheco stated that she was starting to see a pattern with Plaintiff Anderson as it related to reports of sexual harassment. In other words, Ms. Pacheco found Plaintiff Anderson's reports lacked credibility; and that every time Plaintiff Anderson left work due to sexual harassment it has been by her own volition (even though the truth was that Plaintiff Anderson only left to keep herself safe and to mitigate the increasing sexually hostile environment.) Ms. Pacheco also informed Plaintiff Anderson that she could not move Mr. Juarez's eleven-hour shifts around. Instead, Plaintiff Anderson needed to get a doctor's note for anxiety, shorten her shifts and hours, and request accommodations for her anxiety before she could return to work.

36.      Accordingly, Ms. Pacheco made it apparent to Plaintiff Anderson that she

believed the issues of sexual harassment that she was reporting were due to her own issues with anxiety (somehow unrelated to work), rather than due to the ongoing sexual harassment itself. Ms. Pacheco gave Plaintiff Anderson a line cook job description form, which had similar duties listed on it as her prep cook job. Ms. Pacheco instructed Plaintiff Anderson to give the form to her doctor while telling Plaintiff Anderson that she was not sure if her doctor needed to provide her with a note for the company to schedule her shorter shifts. After this conversation, Plaintiff Anderson felt like Ms. Pacheco was gaslighting her and blaming Plaintiff Anderson for having anxiety in the workplace, and not taking her complaints of sexual harassment seriously. Plaintiff Anderson has not been scheduled to work any hours at Defendant since that day. Plaintiff Anderson was forced out of her job for having complained about the sexual harassment she was subjected to.

37.    At all times, Plaintiff Anderson was offended by the sexually inappropriate and unwanted advances, comments, and remarks by Mr. Reid, Tyler, Mr. Juarez, and Mr. Traver. Plaintiff Anderson was also offended by Defendant's management's failure to take any effective corrective action to stop the sexual harassment from continuing despite her numerous complaints to management, and the retaliatory actions (i.e., cutting her hours and requiring a doctor's note to change her schedule to return to work) taken by Ms. Pacheco and other of Defendant's managers in response to her numerous sexual harassment complaints.

38.    In addition to Plaintiffs and Mr. Pilgrim, several other employees of Defendant also reported to Defendant that they were sexually harassed by Mr. Reid, Mr. Juarez, and/or Mr. Traver. For example, on July 8, 2022, Plaintiff Anderson pulled one of the servers, Wendy Little ("Ms. Little") aside in the chemical closet and asked her if she felt that she was being sexually harassed at work. Ms. Little informed Plaintiff Anderson that Mr. Traver made her uncomfortable and told her to watch out for him. Furthermore, Ms. Little informed Plaintiff

Anderson that at least two managers—one of which is no longer working for Defendant—had been sexually harassing her.

39.     Additionally, one of the former prep cooks who is no longer working for Defendant, Ciara (Last Name Unknown) ("Cece"), informed Plaintiff Anderson that Mr. Traver once looked at her as she came out of the women's restroom when she was wearing a lighter material shirt that she had on under her apron, which she removed to use the restroom, and said, "Oh wow! You really don't have any clothes on do you?" while giving her a sensual look. As a result, Cece quit shortly thereafter.

40.     Finally, on or around the end of June 2022, one of the corporate trainers, Maribel, approached Plaintiff Anderson looking stressed out and worried. When Plaintiff Anderson asked her if she was okay, Maribel pointed to her hat, which is the same hat that Mr. Juarez wears as part of his uniform, indicating to her that Mr. Juarez was the issue. Maribel told Plaintiff Anderson that every time she worked with Mr. Juarez, he made her very uncomfortable and that he kept making jokes about his "dick and balls." Plaintiff Anderson responded by suggesting to Maribel that she inform Ms. Pacheco and make a statement about the sexual harassment.

41.     To Plaintiff Anderson's knowledge, Defendant's sexual harassment training consists only of a short video with a few follow up questions during orientation upon hiring. However, the admonishments therein were not followed and there was no follow-up annual anti-harassment training.

42.     Plaintiff Anderson did not receive any further anti-sexual harassment training during her employment with Defendant. Moreover, Defendant has not implemented any effective mechanism to prevent, investigate and/or stop workplace sexual harassment, as shown by management's failure to take any effective action to investigate and/or stop Plaintiff Anderson's harassers from sexually harassing her despite her numerous complaints.

43.     In summary, Plaintiffs were subjected to a pattern and practice of sexual harassment by Mr. Reid, Tyler, Mr. Traver, and Mr. Juarez, which included sexually inappropriate and unwanted advances, remarks, and comments Defendant knew (or should have known) about and failed to stop. Plaintiff Anderson was also subjected to unlawful retaliation in violation of Title VII and the OSLAD. The sexual harassment to which Plaintiffs were subjected and the unlawful retaliation which Plaintiff Anderson experienced, caused Plaintiffs to experience emotional distress and economic losses.

44.     In co-worker sexual harassment cases, an employer is vicariously liable if the employer "knew or should have known" about the harassment, unless it can show it took prompt and effective remedial action. *See, e.g., Burrell v. Star Nursery, Inc.*, 170 F.3d 951 (9th Cir. 1999) (describing the "knew or should have known test" for co-worker harassment cases). Here, Defendant repeatedly failed to exercise reasonable care to prevent and promptly correct sexually harassing behavior by the various male co-workers and even male managers of Defendant.

## V.     ADMINISTRATIVE PREREQUISITES

45.     On or around July 20, 2022, Plaintiff Hix timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission against Defendant, which was cross-filed with the Oregon Bureau of Labor & Industries ("BOLI"). On or around November 9, 2022, Plaintiff Hix filed an amended Charge of Discrimination. The case was assigned a charge no. 551-2022-06678. On or around April 21, 2023, Plaintiff Hix requested the issuance of a right to sue letter. The EEOC issued the right to sue letter on April 24, 2023, which is sufficient for the filing of Plaintiff Hix's federal and state claims. This lawsuit is timely filed within 90 days of the issuance of the EEOC right to sue letter.

46.     On or around July 20, 2022, Plaintiff Anderson timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission against Defendant, which

was cross-filed with the Oregon Bureau of Labor & Industries ("BOLI"). On or around November 15, 2022, Plaintiff Anderson filed an amended Charge of Discrimination. The case was assigned a charge no. 551-2022-06681. On or around April 21, 2023, Plaintiff Anderson requested the issuance of a right to sue letter. The EEOC issued its right to sue letter on April 24, 2023, which is sufficient for the filing of Plaintiff Anderson's federal and state claims. This lawsuit is timely filed within 90 days of the issuance of the EEOC right to sue letter.

47.    As a result of the foregoing, all administrative prerequisites to the filing of this lawsuit have now been satisfied.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Sexual Harassment and Toleration of a Sexually Hostile Work Environment
in Violation of Title VII of the Civil Rights Act of 1964
(42 U.S.C. §§ 2000e, *et seq*.)
(On Behalf of Plaintiffs Against Defendant)**

48.    Plaintiffs re-allege and incorporate the preceding paragraphs as alleged above.

49.    In order to establish a sexually hostile work environment, under Title VII, a Claimant must prove each of the following elements by a preponderance of the evidence: (1) the Charging Party was subjected to sexual advances, requests for sexual conduct, or other verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; (3) the conduct was sufficiently severe or pervasive to alter the conditions of the Charging Party's employment and create a sexually abusive or hostile work environment; (4) the Charging Party perceived the working environment to be abusive or hostile; and (5) a reasonable person in the Charging Party's circumstances would consider the working environment to be abusive or hostile. *Fuller v. City of Oakland, California*, 47 F.3d 1522, 1527 (9th Cir. 1995); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004); see also *Fuller*, 47 F.3d at 1527 (citing *Harris*, 510 U.S. at 21–22); *Ellison v. Brady*, 924 F.2d 872,

878-80 (9th Cir. 1991); *Ninth Circuit Model Jury Instruction*, No. 12.2A.

50.    As set forth above, Defendant through the sexual harassment of Mr. Reid, Mr. Traver, Tyler, and Mr. Juarez, subjected Plaintiffs to a severe or pervasive sexually hostile work environment in violation of Title VII. Defendant failed to prevent and correct the sexual harassment by, among other things, not putting in place appropriate training for both managers and employees, failing to properly monitor the workplace, failing to properly investigate complaints, failing to mete out appropriate discipline to harassers, and by otherwise ignoring sexual harassment by Mr. Reid, Mr. Traver, Tyler, and Mr. Juarez and complaints about them.

51.    Defendant created and fostered a sexually hostile work environment in which Plaintiffs were forced to work which consisted of, among other things, sexually inappropriate and unwanted advances, remarks, and comments, which Plaintiffs were subjected to by Mr. Reid, Mr. Traver, Tyler, and Mr. Juarez to Plaintiffs and others.

52.    Defendant knew (or should have known) about Mr. Reid, Mr. Traver, Tyler, and Mr. Juarez's sexual harassment as a result of the numerous sexual harassment complaints made by Plaintiffs and because it was open and notorious.

53.    As a direct and proximate result of Defendant's violation of Title VII, Plaintiffs have suffered emotional distress. Therefore, Plaintiffs are entitled to recover compensatory damages for their emotional distress to the maximum extent and amount by law.

54.    Defendant has intentionally engaged in the above-described discriminatory practices with reckless indifference to the protected rights of Plaintiffs. Accordingly, Plaintiffs are entitled to an award of punitive damages against Defendant. Plaintiffs seek relief as set forth below.

///

///

## SECOND CAUSE OF ACTION
### Retaliation in Violation of Title VII of the Civil Rights Act of 1964
### (42 U.S.C. 2000e-3(a))
### (On Behalf of Plaintiff Anderson Against Defendant)

55.    Plaintiff Anderson re-alleges and incorporates the preceding paragraphs as alleged above.

56.    As set forth above, Defendant retaliated against Plaintiff Anderson as a result of her sexual harassment complaints in violation of Title VII.

57.    Title VII, as set forth in 42 U.S.C. section 2000e-3(a), makes it an unlawful employment practice under Title VII for an employer to discipline or discharge any person because the person has opposed any practices forbidden by Title VII. The elements of a prima facie case for retaliation are (1) protected activity, (2) adverse action(s) and (3) plaintiff was subjected to adverse actions because of the protected activity. See Ninth Circuit Jury instruction, No. 10.8.

58.    Here, Plaintiff Anderson engaged in protected activity when she made written sexual harassment complaints to Defendant.

59.    Shortly thereafter, Defendant retaliated against Plaintiff Anderson by cutting her hours and requiring a doctor's note to change her schedule to return to work. Plaintiff Anderson's sexual harassment complaints also caused Defendant's discipline of her. Due to the note requirement and the drastic reduction in hours, Plaintiff was effectively discharged from her job due to her protected activities.

60.    As a result, Plaintiff Anderson is entitled to recover actual damages, including (but not limited to) an award of back pay, front pay, and prejudgment interest for lost wages.

61.    As a direct and proximate result of Defendant's violation of Title VII, Plaintiff Anderson also has suffered emotional distress. Therefore, Plaintiff Anderson is entitled to

recover compensatory damages for her emotional distress, to the maximum extent and amount by law.

62.    Defendant intentionally engaged in the above-described retaliatory practices with malice and/or reckless indifference to the protected rights of Plaintiff Anderson. Accordingly, pursuant to Title VII, Plaintiff Anderson is entitled to an award of punitive damages against Defendant. Plaintiff Anderson seeks relief as set forth below.

### THIRD CAUSE OF ACTION
**Sexual Harassment and Toleration of a Sexually Hostile Work Environment
in Violation of Oregon State Law Against Discrimination
(ORS 695A.001, *et seq.*)
(On Behalf of Plaintiffs Against Defendant)**

63.    Plaintiffs re-allege and incorporate the preceding paragraphs as alleged above.

64.    "Harassment on the basis of sex is a violation of ORS 659.030. It is discrimination related to or because of an individual's gender. Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when such conduct is directed toward an individual because of that individual's gender and such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *See Fred Meyer, Inc. v. Bureau of Labor & Indus.*, 152 Ore.App. 302, 306 (1998).

65.    As set forth above, Defendant through the sexual harassment of Mr. Reid, Mr. Traver, Tyler, and Mr. Juarez, subjected Plaintiffs to a severe or pervasive sexually hostile work environment in violation of Oregon law. Defendant failed to prevent and correct the sexual harassment by, among other things, not putting in place appropriate training for managers and employees, failing to properly monitor the workplace, failing to properly investigate complaints, failing to mete out appropriate discipline to harassers, and by otherwise ignoring sexual harassment by Mr. Reid, Mr. Traver, Tyler, and Mr. Juarez and complaints about them.

66.     Defendant created and fostered a sexually hostile work environment in which Plaintiffs were forced to work which consisted of, among other things, sexually inappropriate and unwanted advances, remarks, and comments, which were engaged in by Mr. Reid, Mr. Traver, Tyler, and Mr. Juarez to Plaintiffs and others.

67.     Defendant knew (or should have known) about Mr. Reid, Mr. Traver, Tyler, and Mr. Juarez's sexual harassment as a result of the numerous sexual harassment complaints made by Plaintiffs. In addition, the sexual harassment was open and notorious.

68.     As a direct and proximate result of Defendant's violation of Oregon law, Plaintiffs have suffered emotional distress, and are entitled to recover compensatory damages for their emotional distress to the maximum extent and amount by law.

69.     Defendant has intentionally engaged in the above-described discriminatory practices with malice and/or reckless indifference to the protected rights of Plaintiffs. Accordingly, Plaintiffs are entitled to an award of punitive damages against Defendant. Plaintiffs seek relief as set forth below.

<u>**FOURTH CAUSE OF ACTION**</u>
**Retaliation in Violation of Oregon State Law Against Discrimination**
**(ORS 695A.001, *et seq.*)**
**(On Behalf of Plaintiff Anderson Against Defendant)**

70.     Plaintiff Anderson re-alleges and incorporates the preceding paragraphs as alleged above.

71.     "To establish [a] retaliation claim [under Oregon law], [a] plaintiff [must] prove three elements: (1) he engaged in an activity protected by law, that is, he opposed or reported discrimination or harassment, (2) defendant subjected him to an adverse employment action, and (3) defendant subjected him to the adverse employment action because of plaintiff's opposition to or report of racial discrimination or racial harassment." *Summerfield v. Or Liquor Control*

*Comm'n*, 366 Ore 763, 782 (2020).

72.     As set forth above, Defendant retaliated against Plaintiff Anderson as a result of her sexual harassment complaints.

73.     Plaintiff Anderson engaged in protected activity when she made sexual harassment complaints in writing to Defendant.

74.     Shortly thereafter, Defendant retaliated against Plaintiff Anderson by cutting her hours and requiring a doctor's note to change her schedule to return to work. Plaintiff Anderson's complaints caused and/or played a part in Defendant's discipline of her and in Defendant's adverse actions taken against her.

75.     As a result, Plaintiff Anderson is entitled to recover actual damages, including but not limited to, an award of back pay, front pay, and prejudgment interest for lost wages.

76.     As a direct and proximate result of Defendant's violation of the OSLAD, Plaintiff Anderson also has suffered emotional distress. Therefore, Plaintiff Anderson is entitled to recover compensatory damages for her emotional distress to the maximum extent and amount by law.

77.     Defendant intentionally engaged in the above-described retaliatory practices with malice and/or reckless indifference to the protected rights of Plaintiff Anderson. Accordingly, pursuant to OSLAD, Plaintiff Anderson is entitled to an award of punitive damages against Defendant. Plaintiff Anderson seeks relief as set forth below.

## VII.    DEMAND FOR JURY TRIAL

78.     Plaintiffs hereby demand a jury trial on all causes of action.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1.      Defendant be found liable for (a) creating and fostering a sexually hostile work

environment in violation of Title VII; and (b) retaliation by Defendant against Plaintiff Anderson in violation of Title VII;

2.      Defendant be found liable for (a) creating and fostering a sexually hostile work environment in violation of the OSLAD;   and (b) retaliation by Defendant against Plaintiff Anderson in violation of the OSLAD;

3.      Defendant compensate Plaintiffs for all actual damages caused by its or their violation of Title VII to the maximum extent and amount allowed for and provided by law;

4.      Defendant compensate Plaintiffs for all actual damages caused by its or their violation of the OSLAD to the maximum extent and amount allowed for and provided by law;

5.      An award against Defendant and in favor of Plaintiff Anderson for Plaintiff Anderson's actual damages, including but not limited to, an award of back pay, front pay, and interest associated with her retaliation claims under Title VII and the OSLAD;

6.      An award of compensatory damages against Defendant and in favor of Plaintiffs for Plaintiffs' emotional distress associated with their sexual harassment and retaliation claims under Title VII and the OSLAD;

7.      An award of punitive damages against Defendant and in favor of Plaintiffs for Defendant's reckless disregard of Plaintiffs' right to work in an environment free from sexual harassment in violation of Title VII and/or Oregon state law;

8.      An award of punitive damages against Defendant and in favor of Plaintiff Anderson for Defendant's reckless disregard of Plaintiff Anderson's right to work in an environment free from unlawful retaliation in violation of Title VII and/or Oregon state law;

9.      An award of reasonable attorneys' fees for all work performed by counsel for Plaintiffs on behalf of Plaintiffs;

10.      An award of all costs incurred by Plaintiffs' counsel in litigating this matter; and

11.    An award of such other and further relief, at law or in equity, as the Court may deem appropriate, to which Plaintiffs may be justly entitled.

DATED this 28th day of April, 2023.

LAW OFFICES OF JONNY RUSSELL

By:  _/s/Jonny Russell_____
    Jonny Russell, OSB #220641
    (805) 302-1805

-and-

ACKERMANN & TILAJEF, P.C.
Craig Ackermann (*pro hac vice* application forthcoming)
Brian Denlinger (*pro hac vice* application forthcoming)
(310) 277-0614

Attorneys for Plaintiffs